# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DUSTIN SAUDER,**

       **Plaintiff,**

**v.**                                               **Case No:  6:16-cv-932-Orl-28GJK**

**LEO'S CONCRETE SPECIALTIES,
INC., and LEO BADALAMENTI,**
individually and as an officer of Leo's
Concrete Specialties, Inc.,

       **Defendants.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **AMENDED MOTION FOR SUMMARY FINAL JUDGMENT AND MEMORANDUM OF LAW (Doc. No. 58)** |
| **FILED:** | **September 26, 2017** |

**THEREON** it is recommended that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 61)** |
| **FILED:** | **September 29, 2017** |

**THEREON** it is recommended that the motion be **DENIED**.

## I. BACKGROUND.

Defendant Leo's Concrete Specialties, Inc., is a concrete and masonry company that employed Plaintiff from 2012 through March 2016, and Defendant Leo Badalamenti was an officer with the company who had the power to hire and fire employees. Doc. No. 1 at ¶¶ 6, 8, 9, 18; Doc. No. 61-1 at 6. Plaintiff worked as a Finisher Foreman and was paid an hourly rate. Doc. No. 1 at ¶ 18; Doc. No. 28 at ¶ 18. Plaintiff alleges that Defendants required him to begin his workday at The Shop, which is Leo's Concrete Specialties' principal place of business, where he would receive his orders for the day and load the company truck with the equipment "integral and indispensable" for performing his work at remote job sites from The Shop ("Job Sites"), and then drive the company truck from The Shop to the Job Sites. Doc. No. 1 at ¶¶ 6, 7, 20, 21. Plaintiff contends that he would return to The Shop at the end of the workday and unload the equipment. *Id.* at ¶¶ 25, 26. Plaintiff alleges that he was not paid for his work at The Shop or for traveling between The Shop and the Job Sites. *Id.* at ¶¶ 29-30. Based on these allegations, on May 27, 2016, Plaintiff filed a Complaint against Defendants for violating the overtime provisions of the Fair Labor Standards Act ("FLSA"). *Id.* at 8-9. On November 8, 2016, Defendants filed their Answer, Affirmative Defenses and Counterclaim. Doc. No. 28. On March 27, 2017, the Court dismissed the Counterclaim without prejudice. Doc. No. 36.

## II. THE MOTIONS.

On September 26, 2017, Defendants filed an Amended Motion for Summary Final Judgment and Memorandum of Law ("Defendants' Motion"). Doc. No. 58. Defendants argue that they are entitled to judgment as a matter of law because Plaintiff cannot sufficiently prove damages. *Id.* at 8. On October 5, 2017, Plaintiff filed his response to Defendants' Motion, arguing

that Defendants' records regarding the time Plaintiff worked are inaccurate. Doc. No. 62. Defendants did not file a reply to Plaintiff's response.

On September 29, 2017, Plaintiff filed his Motion for Summary Judgment ("Plaintiff's Motion"). Doc. No. 61. Plaintiff argues that he is entitled to summary judgment "because there is no dispute of material fact that Plaintiff is entitled to compensation for those hours for which he worked but went unpaid and Plaintiff has provided a reasonable estimate of the damages at issue . . . ." *Id.* at 2. On October 11, 2017, Defendants filed their response to Plaintiff's Motion, arguing that there are issues of material fact precluding summary judgment for Plaintiff. Doc. No. 63. On October 25, 2017, Plaintiff filed his reply to Defendant's response, arguing that Defendants did not present any evidence demonstrating a disputed issue of material fact. Doc. No. 64.

### III. <u>STANDARD OF REVIEW</u>.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Liberty Lobby, Inc.*, 477 U.S. at 257; *see* Fed. R. Civ. P. 56(c). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). In resolving a summary judgment motion, the Court must view the record evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). The standard of

review is unaffected by the parties filing cross-motions for summary judgment. *Innovak Int'l, Inc. v. Hanover Ins. Co.*, No. 8:16-CV-2453-MSS-JSS, 2017 WL 5632718, at *4 (M.D. Fla. Nov. 17, 2017).

## IV. ANALYSIS.

Defendants' Motion focuses solely on the damages aspect of Plaintiff's case, arguing that "the **only** evidence Plaintiff has to support his claim for damages is speculative and far from definite." Doc. No. 58 at 6 (emphasis supplied). In Defendants' Motion, however, they state, "[S]peculation evidence is only allowed where 'the employer's records are inaccurate or inadequate,'" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute on other grounds as stated in Integrity Staffing Sols., Inc. v. Busk, U.S.*, 135 S. Ct. 513, 516-17 (2014)), and "Estimated damages should only be allowed when [the] employer's payroll records are not trustworthy." *Id.* at 7. Plaintiff presents evidence that Defendants' payroll records could be inaccurate, inadequate, or untrustworthy. Doc. Nos. 21, 61-5.

As one example, in Exhibit E to Plaintiff's Motion, Plaintiff presents the payroll records from Defendant showing that on most days, Plaintiff clocked in at exactly 7:00 a.m. Doc. No. 61-5. But in his answers to the Court's Interrogatories and his deposition testimony, Plaintiff states that his workday started at 5:30 a.m. Doc. No. 21 at 3; Doc. No. 58 at 13. In Plaintiff's deposition, he testified that there were approximately ten times that his paychecks contained less hours than he worked and he raised the issue with his employer, but those errors were corrected. Doc. No. 58 at 12-13.

The evidence that Defendants' records could be considered inaccurate, inadequate, or untrustworthy is bolstered by Defendants' counsel's letters to Plaintiff's counsel regarding Defendants' records. Defendants produced handwritten notes, text messages, and "Exaktime"

records[1] to Plaintiff during discovery. Doc. No. 62-2. In attempting to explain discrepancies among these records, Defendants' counsel wrote the following paragraph to Plaintiff's counsel:

> I realize we provided you with the handwritten notes done by the supervisor of this crew. He did this as a backup system. We also learned the supervisor rounded off the time which Exaktime did not do. Said another way, it is Exaktime, not the handwritten entries, which correctly set forth the hours and minutes worked. The person who did the paychecks used Exaktime and not the supervisor's handwritten notes. When I supplied you bate stamp #280-#509, my contact representative overlooked Exaktime or was reminded in discussions with others more involved in payroll.

*Id.* at 1. This paragraph implies that there are questions about the accuracy of Defendants' records regarding the time Plaintiff worked due to rounding off and apparent inconsistencies between the supervisor's notes and the Exaktime entries used to generate paychecks. Such discrepancies lead to a reasonable inference that Defendants' records are inaccurate, inadequate, or untrustworthy. And, if those records are inaccurate, inadequate, or untrustworthy, then, according to Defendants' own Motion, Plaintiff can rely on his own estimates of hours worked to establish his damages. Doc. No. 58 at 7. Accordingly, genuine disputes of material fact exist regarding whether Defendants' records are inaccurate, inadequate, or untrustworthy thereby permitting Plaintiff to establish his damages by speculative evidence, and thus it is recommended that Defendants' Motion be denied.

Plaintiff's Motion should also be denied because there are genuine disputes of material fact. The main issue in this case is whether Plaintiff worked overtime by arriving at The Shop and loading the company truck before traveling to the Job Sites and returning to The Shop after working at the Job Sites to unload the company truck. In responding to Plaintiff's Motion, Defendants submitted affidavits of their employees swearing that Plaintiff had everything he

---

[1] Exaktime is the computer system Defendants used to track Plaintiff's time. Doc. No. 62 at 2.

needed in the truck to do his job. Doc. No. 63 at 8, 14-15. Charles Bennett, who worked with Plaintiff on concrete jobs while Plaintiff was employed by Defendants, stated that Mr. Bennett would occasionally go to The Shop for a business-related reason when he had the company truck. *Id.* at 14. He stated that there was no need for Plaintiff to go to The Shop daily "unless [Plaintiff] did so, to pick up his crew member or to return crew members to the office because they lacked transportation to go to the job site." *Id.* at 14-15. Mr. Bennett also stated that if he did pick up an employee on his crew that lacked transportation to The Shop or the Job Sites, then he "was told and understood it was not within my job duties and [he] would not be paid for this time." *Id.* at 14. Jeff Magnuson, Plaintiff's supervisor, stated the following in his affidavit:

> There were rare times a finisher with a truck had to come to the shop for something needed to do their job, as all the tools they needed to work as a finisher, were usually on the pick up truck. On those rare occasions when something was needed by [Plaintiff] requiring him to come by the shop, [Defendants] compensated [Plaintiff] (and others with [Defendants'] truck), for their time.

Doc. No. 63 at 8. Mr. Magnuson also stated that Plaintiff "was told that if he chose to pick up an employee, then he did so on his own time." *Id.*

Plaintiff argues that Defendants' evidence is insufficient to demonstrate a disputed issue of material fact because it appears to rely on a claim that Plaintiff was a "concrete finisher" rather than a "finisher foreman;" that Defendants' evidence does not negate the proposition that Plaintiff's activities were integral and indispensable to the principal activities he was employed to perform; and that the statements in the affidavits are conclusory. Doc. No. 64 at ¶¶ 2, 4. Plaintiff does not explain why he believes that Defendants are relying on a claim that Plaintiff was a concrete finisher. The statements in the affidavits that the truck contained all the necessary equipment to do the job support the reasonable inference that Plaintiff did not go to The Shop every morning before traveling to the Job Sites or return to The Shop every evening from the Job

Sites. These statements also support the reasonable inference that Plaintiff traveling to and from The Shop before and after working on the Job Sites was not integral and indispensable to the principal activities that Defendants employed Plaintiff to perform. Plaintiff relies on *Secretary of Labor, United States Department of Labor v. E. R. Field, Inc.*, 495 F.2d 749 (1st Cir. 1974), to support his proposition that the time he spent traveling between The Shop and the Job Sites is compensable. Doc. No. 61 at 16. In that case, in which the First Circuit affirmed the district court's ruling that an electrician's time spent traveling from his employer's main office to the job sites was compensable, the First Circuit stated that the important consideration is whether the employee's services were performed for the employer's benefit with the employer's knowledge and approval. *Secretary of Labor, United States Department of Labor v. E. R. Field, Inc.*, 495 F.2d at 751. The statements in Defendants' employees' affidavits that picking up crew members and bringing them to Job Sites was not within their job duties and Defendants would not compensate them for this lead to the reasonable inference that this activity was performed without Defendants' approval, thus precluding summary judgment on the issue of whether Plaintiff's activities were integral and indispensable to the principal activities that Defendants employed Plaintiff to perform.

Finally, the affidavits are not so conclusory as to prevent finding a disputed issue of material fact. The affidavits do not simply state that Plaintiff did not go to The Shop before and after the Job Sites; instead, they provide reasons why Plaintiff either did not do so or should not be compensated for doing so. Plaintiff fails to demonstrate that there are no genuine disputed issues of material fact, and thus it is recommended that Plaintiff's Motion be denied.

### V.  CONCLUSION.

Accordingly, it is recommended that:

1. Defendants' Motion (Doc. No. 58) be **DENIED**; and

2. Plaintiff's Motion (Doc. No. 61) be **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida, on November 30, 2017.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties